OPINION
{¶ 1} Plaintiff-appellee, Darlene S. Wolfe, and defendant-appellant, David E. Wolfe, were divorced, effective January 1, 1999, and had two children, Danielle (d.o.b. 8/24/1985) and Daniel (d.o.b. 10/22/1988). In the divorce decree, appellee was designated the residential parent and legal custodian of the two minor children and appellant was awarded Loc.R. 27 visitation time and was ordered to pay child support in the amount of $1,221.43 per child, per month, plus processing charge. In proportion to their incomes, appellee was ordered to pay 7.98 percent and appellant 92.02 percent of the cost of the children's uncovered medical expenses. The dependency exemptions were awarded to appellant.
 {¶ 2} On October 30, 2001, appellee filed a motion to modify child support and on June 17, 2002, appellant filed a motion to reduce his child support obligation. After a hearing, on June 3, 2003, the magistrate issued a decision granting appellee's motion and denying appellant's motion.
 {¶ 3} The magistrate found that the child support guidelines indicate that appellant would have a support obligation of $719.70 per month per child, for a total of $1,439.41 per month for 2001, and $713.92 per month per child, for a total of $1,427.85 per month for 2002. The magistrate found the guideline amount of child support is unjust and inappropriate and not in the best interest of the children because the expenses of the children have increased since the time of divorce, appellee incurred additional expenses resulting from appellant not exercising significant parenting time with the children and appellee had to liquidate marital assets in the past to meet expenses for her and the children. The magistrate also found that appellee had not realized the investment income imputed to her at the time of the divorce and the future income she may derive from marital assets is reduced because of the liquidation of some of the assets. The magistrate found the significant disparity in incomes was also a factor which made the guideline support amount unjust, inappropriate and not in the best interest of the children. The magistrate increased the child support obligation to $1,800 per month, per child, for a total of $3,600 per month, effective October 30, 2001, the date appellee's motion was filed.
 {¶ 4} The magistrate also granted appellee the dependency exemptions for the children and ordered appellant to pay $10,000 of appellee's attorney fees and split the cost of the uninsured extraordinary health care expenses, with appellee paying 20 percent and appellant paying 80 percent.
 {¶ 5} Appellant filed objections, which the trial court overruled. Appellant then filed a notice of appeal and raised the following assignments of error:
1. The trial court erred and abused its discretion in calculating the statutory guidelines amount of child support from which it deviated in arriving at defendant-appellant's child support obligation.
2. The trial court erred and abused its discretion in calculating the amount by which it deviated from the guidelines amount of child support in determining defendant-appellant's child support obligation.
3. The trial court erred and abused its discretion in its award of attorney fees.
 {¶ 6} By the first assignment of error, appellant contends that the trial court erred in calculating the statutory guideline amount of child support because it erred in determining both appellant's and appellee's incomes. Appellant objects to the perks attributed to him in his income.
 {¶ 7} Initially, we note that a trial court's modification of a prior child support order is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion. Woloch v. Foster
(1994), 98 Ohio App.3d 806, 810, 649 N.E.2d 918. In order to find that the trial court abused its discretion, we must find more than an error of law or judgment, an abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Most instances of an abuse of discretion result in decisions that are unreasonable, as opposed to arbitrary and capricious. AAAA Enterprises, Inc. v. River PlaceCommunity Urban Redevelopment Corp. (1990), 50 Ohio St.3d 157,553 N.E.2d 597. A decision that is unreasonable is one that has no sound reasoning process to support it.
 {¶ 8} Where, as in this case, the combined gross income of the parents is greater than $150,000, per year, the court shall calculate the child support obligation on a case-by-case basis. R.C. 3119.04(B). The court is to consider the needs and the standard of living of the children and of the parents. R.C. 3119.04(B) provides in pertinent part, as follows:
(B) If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings.
 {¶ 9} In this case, the parties retained Richard Ferguson, a certified public accountant, to review the financial documents, to ascertain the parties' incomes and to prepare an analysis of that income and child support worksheets. (Tr. at 15-16.) The evidence was presented by Joint Exhibits 1, and 1-A through Q. Mr. Ferguson testified regarding his findings. Appellant is the sole shareholder of A-1 Plumbing and Davey Drain, and makes all the financial decisions related to the companies. In 2001, appellant received salary income from the businesses totaling $120,398.44, income from dividends and interest totaling $7,319, distributions from his companies totaling $48,348, and rental income totaling $51,986. (Jt. Ex. 1-B.) Mr. Ferguson attributed cash perks to appellant's income of $28,830.18 and defined the perks as items the corporation paid for that were not ordinary, necessary business expenses or expenses that related to a personal nature rather than the ordinary course of business. (Tr. at 44.) Mr. Ferguson included in this category expenses related to life insurance policies to benefit the children which were not required by the divorce decree, personal automobile usage, architect fees related to the building of a residence, attorney fees and miscellaneous credit card purchases for non-business related items. (Jt. Ex. 1-E and 1-F.) In 2002, appellant received salary income from his companies totaling $118,300, interest and dividend income totaling $3,349, distributions totaling $63,061, rental income totaling $53,486, and cash perks totaling $36,562. (Jt. Ex. 1;1-E and 1-F.)
 {¶ 10} During the marriage, appellee worked as the office manager for the plumbing companies. (Tr. Vol. II, at 17-18.) However, she contracted multiple sclerosis and suffered a relapse at the time of the divorce. (Tr. Vol. II, at 21.) She experiences chronic fatigue, pain, numbness and muscle spasms. (Tr. Vo. II, at 12-13.) During the marriage she had help from her mother, babysitters and friends. (Tr. Vol. II, at 14.) Since the divorce, her mother has moved in with her and cooks, cleans, shops, transports the children and helps with all the household duties. (Tr. Vol. II, at 15.) Approximately two years after the divorce, appellee was able to return to work. She is currently employed by SMP and, in 2001, earned a salary of $24,350 and had capital gain income of $346. (Jt. Ex. 1-E.) In 2002, she earned a salary of $26,331 and had capital gain income of $4,953, based upon a three-year average. (Jt. Ex. 1-A; 1-E.) In each of those years, she received spousal support from appellant totaling $30,000 per year. Based upon these numbers, the magistrate prepared child support guideline worksheets for 2001 and 2002, which established a child support obligation for appellant of $719.70 per month, per child, totaling $1,439.41 per month for 2001, and $713.92 per month, per child, totaling $1,427.85 per month for 2002.
 {¶ 11} If a court finds that the guideline amount is unjust or inappropriate and not in the best interest of the children a court may establish a child support amount that deviates from the guideline amount. See R.C. 3119.22. After considering the factors provided in R.C.3119.23,[1] the magistrate found the guideline amount of child support is unjust and inappropriate and not in the best interest of the children because the expenses of the children have increased since the time of divorce. Another factor is that appellee has incurred additional expenses resulting from appellant not exercising significant parenting time with the children. Although appellant was awarded Loc.R. 27 visitation, he has only seen his daughter three times since the divorce and only visits with his son one evening per week. He has only enjoyed one weekend visitation on a Boy Scout camping trip. Appellee testified she had to liquidate marital assets in the past to meet expenses for her and the children. The magistrate also found that appellee had not realized the investment income imputed to her at the time of the divorce and the future income she may derive from marital assets is reduced because of the liquidation of some of the assets. The magistrate found the significant disparity in incomes was also a factor which made the guideline support amount unjust, inappropriate and not in the best interest of the children. The magistrate increased the child support obligation to $1,800 per month, per child, for a total of $3,600 per month, effective October 30, 2001, the date appellee's motion was filed. The trial court found that the record fully supports the magistrate's findings and conclusions concerning the deviation factors of R.C. 3119.23 and his conclusion that the guideline amount is unjust, unreasonable and not in the best interest of the children.
 {¶ 12} Appellant contends that the trial court erred in determining his income for child support purposes because the perks, totaling $28,830.18 for 2001 and $36,562 for 2002, should not have been included in his income. Appellant contends that the trial court erred by including the perks in his annual gross income from employment on line one of the worksheet instead of self-employment income on line two of the worksheet. Since the definition of "gross income" excludes self-employment income, and, pursuant to the second paragraph of the syllabus of Marker v. Grimm (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, the trial court must "literally and technically" follow the terms of R.C. 3113.215 in all "material respects," the trial court erred.[2]
 {¶ 13} Initially, we note that, while appellant objected to the inclusion of the cash perks in his income, he did not argue to the trial court in his objections that the magistrate failed to technically follow the terms of the statute because his income was placed on line one of the child support worksheet instead of line two. Civ.R. 53(E)(3) requires objections to be specific and state with particularity the grounds of the objection and it requires a party to file an objection to the court's adoption of any finding of fact or conclusion of law or be precluded from assigning such as error on appeal.
 {¶ 14} Generally, an appellate court will not consider an issue raised for the first time on appeal when the issue could have been raised in the trial court. McEnery v. McEnery (Dec. 21, 2000), Franklin App. No. 00AP-69. In McEnery, the court held that the rule is especially compelling when the issue concerns a discretionary determination, such as a child support obligation. However, in this case, appellant did raise an objection that the perks should not be included in his gross income. We have determined that whether income is placed on line one or line two of the child support worksheet, the figures on the lines are added together in line seven so the issue is not on which line the item is placed, but, rather, whether it is properly included as income in this case.
 {¶ 15} The only evidence of the parties' income was presented by Joint Exhibits 1 and 1A through 1F. The exhibits were produced by Richard Ferguson, who was jointly retained by the parties to determine their income. The trial court determined that in arguing that the exhibits contained improper evidence of the parties' income, appellant claimed an alleged error invited by his own exhibit. Appellant did not present any other evidence countering Mr. Ferguson's work or his inclusions of the perks as income.
 {¶ 16} In Levine v. Levine, Franklin App. No. 02AP-399, 2002-Ohio-7198, this court determined that shareholder distributions and loans from an S Corporation to the appellant, that were paid on a regular basis to pay personal expenses, such as attorney fees, loan payments, house payments and interest payments which are treated as cash flow items which reduce the appellant's personal expenses, should be included in his gross income for child support purposes.
 {¶ 17} In Gerlach v. Gerlach, Franklin App. No. 03AP-22, 2004-Ohio-1607, this court again found it was not an abuse of discretion for the trial court to include loans from the company of which the appellant was the majority owner. The loans were used to pay personal expenses and no written documentation was provided to show the appellant was required to pay back the loans. Thus, in this case, the trial court did not abuse its discretion in including the cash perks in appellant's gross income.
 {¶ 18} Appellant also argues that several of the perks should have been eliminated as part of appellant's income because the items are not significant and reduce personal living expenses as "self-generated income" is defined by R.C 3119.01(C)(13). Appellant argues that there is no evidence that he would have provided the life insurance on his life with the children as beneficiaries if his employer did not pay the $10,000 premium. However, the divorce decree does not require the life insurance and appellant makes the financial decisions for the corporations, and thus, makes the decisions regarding perks. (Tr. Vol. I, at 51.)
 {¶ 19} Appellant also argues that the credit card charges should not be included as a perk in his income, but, rather, the payments made by the corporation should be considered "nonrecurring or unsustainable income or cash flow item," as provided in R.C. 3119.01(C)(8). R.C.3119.01(C)(8) defines nonrecurring or unsustainable income or cash flow item as "an income or cash flow item the parent receives in any year or for a number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis." While Mr. Ferguson did testify that the draws from the corporations were sporadic and seemed as if appellant sometimes would forgo a draw to repay the corporations, appellant testified that the corporations made payments on his credit cards and sometimes he did too. (Tr. Vol. I at 124.) However, appellant provided no evidence of what amounts he repaid the corporation for paying his personal expenses. Thus, both cash perks were includable in appellant's income.
 {¶ 20} Finally, appellant argues that the trial court erred in determining appellee's income because the court failed to consider gifts of cash from appellee's mother. The trial court determined that appellee's monthly income is $6,686.25, and appellee testified that her monthly budget is $9,584. Her mother provides $500 per month to cover expenses and appellant argues that there is a monthly deficit of $1,397.75 (subtracting the $1,000 per month from the budget for a savings account which appellee is not saving and the $500 contribution from appellee's mother). Appellant argues that any money appellee's mother gives her above the $500 should be considered a gift and included in appellee's gross income.
 {¶ 21} While appellee did testify that she is no longer liquidating marital assets to meet her monthly budget, she also testified that she has incurred additional credit card debt and owes her mother money. (Tr. Vol. II, at 67-68.) She testified that she experiences an approximate $3,000 shortfall in her budget each month. (Tr. Vol. II, at 70.) She did not testify that she was meeting her monthly budget.[3]
 {¶ 22} Based upon the testimony, the trial court did not abuse its discretion in calculating the parties' incomes or the appropriate child support guideline amount. Appellant's first assignment of error is not well-taken.
 {¶ 23} By the second assignment of error, appellant contends that the trial court erred and abused its discretion in calculating the amount by which it deviated from the guideline amount of child support in determining appellant's child support obligation. Appellant argues that the trial court erred in considering the R.C. 3119.23 factors and by failing to determine the children's pre-divorce standard of living.
 {¶ 24} Appellant contends that Birath v. Birath (1988),53 Ohio App.3d 31, 558 N.E.2d 63, requires the trial court to determine the children's pre-divorce standard of living. In Birath, at 37, this court actually stated, as follows:
The amount necessary for child support is that amount necessary to maintain for the children the standard of living they would have enjoyed had the marriage continued. The amount reasonable for child support includes consideration of other factors including the financial resources and needs of both the custodial and noncustodial parent.
 {¶ 25} The language of Birath, is not merely the pre-divorce standard of living as appellant contends, but, rather, the standard of living the children would have enjoyed had the marriage continued. While there was little testimony regarding the pre-divorce standard of living, appellee did testify that the parties had waited until later in life to have the children and indulged them as a result. (Tr. Vol. II, at 28.) Christmas celebrations were extravagant. (Tr. Vol. II, at 66.) The parties took three to four vacations per year while married. (Tr. Vol. II, at 44.) Appellee testified that, although her expenses have increased, the nature and type of things she purchases now is similar to the ones during the marriage. (Tr. Vol. II, at 38.) As to the current standard of living, the trial court found that the children experience a more modest lifestyle with appellee than they would with appellant. Since the divorce, appellant has purchased a timeshare in Hawaii, an airplane and a boat.
 {¶ 26} Appellant also argues that the trial court failed to make a case-by-case analysis as required by R.C. 3119.04(B) because it considered the factors provided in R.C. 3119.23. As stated above, for families with a combined gross income greater than $150,000, R.C.3119.04(B) provides, as follows:
(B) If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. * * *
 {¶ 27} In this case, the trial court determined that the child support guideline amount established a child support obligation for appellant of $719.70 per month, per child, totaling $1,439.41 per month for 2001, and $713.92 per month, per child, totaling $1,427.85 per month for 2002. However, R.C. 3119.22 provides that a court may establish a child support order that deviates from the guideline amount, if the guideline amount is found to be unjust, inappropriate and not in the best interest of the children. R.C. 3119.23 provides factors for the court to consider in determining whether to grant a deviation. In this case, the trial court considered the factors provided in R.C. 3119.23 and determined that appellant's limited parenting time, the large disparity in incomes, benefits received because of shared living expenses, increased expenses due to the children's extracurricular activities, inability to maintain the same standard of living, in addition to other factors, made the guideline amounts unjust and inappropriate and not in the best interest of the children. Appellant argues that the R.C. 3119.22 schedule and the deviation factors in R.C. 3119.23 do not apply in cases involving combined incomes greater than $150,000.
 {¶ 28} While the trial court was not required to consider the factors pursuant to R.C. 3119.23, it is not an abuse of discretion to do so in addition to computing the child support obligation on a case-by-case basis in accordance with R.C. 3119.04(B). See Peters v. Peters, Lorain App. No. 03CA008306, 2004-Ohio-2517. In Rex v. Rex, Cuyahoga App. No. 82864, 2004-Ohio-997, the court merely considered the R.C. 3119.23
factors in its case-by-case analysis as the trial court did in this case.
 {¶ 29} The trial court found the guideline amount of child support is unjust and inappropriate and not in the best interest of the children because the expenses of the children have increased since the time of divorce, appellee incurred additional expenses resulting from appellant not exercising significant parenting time with the children, and appellee had to liquidate marital assets in the past to meet expenses for her and the children. Another factor was that appellee had not realized the investment income imputed to her at the time of the divorce and the future income she may derive from marital assets is reduced because of the liquidation of some of the assets. Finally, the significant disparity in incomes was also a factor which made the guideline support amount unjust, inappropriate and not in the best interest of the children. Although the trial court considered the R.C. 3119.23 factors, it considered all the evidence presented and complied with the statutory requirements for establishing child support. It is not an abuse of discretion to consider the R.C. 3119.23 factors if the trial court computes the child support obligation on a case-by-case basis in accordance with R.C. 3119.04(B). Appellant's second assignment of error is not well-taken.
 {¶ 30} By the third assignment of error, appellant contends that the trial court erred and abused its discretion in its award of attorney fees. The trial court required appellant to pay $10,000 towards appellee's attorney fees. Appellant argues that the trial court erred because appellee has substantial income and assets to pay her attorney fees. An appellate court reviews a trial court's decision regarding attorney fees pursuant to an abuse of discretion standard. Holcomb v.Holcomb (Sept. 26, 2001), Lorain App. No. 01CA007795.
 {¶ 31} R.C. 3105.18(H) provides that:
In divorce and legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any appeal, any proceeding arising from a motion to modify a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney fees. {¶ 32} In this case, the parties stipulated the reasonableness and the necessity of appellee's attorney fees. (Tr. Vol. II, at 4-5; 63.) The trial court found that, based on appellee's testimony regarding her monthly deficit in her budget and the disparity between the parties' incomes, appellant has the ability to pay the amount awarded and that, absent such an award, appellee would have been prevented from fully litigating her case.
 {¶ 33} In the divorce decree, the trial court imputed $17,573 in income to appellee, including $7,173 in interest income which appellee has not realized. Although appellee has since become employed, her expenses have risen dramatically. Appellee had to liquidate assets awarded to her in the divorce to meet monthly expenses, has debt secured by the house in the amount of $32,000, and carries a balance on her credit cards that she did not have at the time of the divorce. She still continues to have an approximate $3,000 shortfall per month in her budget. She has incurred over $18,000 in attorney fees.
 {¶ 34} Appellant, however, has experienced an increase in his gross income. He has remarried and currently pays no monthly living expenses. (Tr. Vol. I, at 96.) Since the divorce, he has purchased a timeshare in Hawaii, an airplane, a boat, and has hired an architect to design plans for building a new house. Given the testimony, there was substantial credible testimony for the trial court to determine that appellant has the ability to pay appellee's attorney fees and that appellee would have been prevented from fully litigating her rights and protecting her interests without an award of attorney fees. The trial court did not abuse its discretion in making that determination. Appellant's third assignment of error is not well-taken.
 {¶ 35} For the foregoing reasons, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.
Judgment affirmed.
Lazarus and French, JJ., concur.
[1] In Cho v. Cho (Dec. 23, 2003), Mahoning App. No. 03MA73, 2003-Ohio-7111, the Seventh Appellate District held that in cases involving combined incomes greater than $150,000, R.C. 3119.22 and 3119.23
do not apply since R.C. 3119.04(B) provides that the child support is determined on a case-by-case basis.
[2] R.C. 3113.215 was repealed, effective March 22, 2001, and analogous provisions were enacted in 3119.01 et seq. Some courts have held that the rule of Marker is applicable to R.C. 3119.022. See Kennard v. Kennard,
Delaware App. No. 02CA-F-11-059, 2003-Ohio-2800.
[3] The trial court found that while some of appellee's expenses could be lower, even if her budget were adjusted by reducing some expenses in half and removed others, the difference was not significant enough to negate appellee's credibility or the magistrate's determination that the financial resources, assets and needs of the parents support an upward deviation.